IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



JOHN BERGHOLZ,

        Plaintiff,

v.

THE JOHN MARSHALL LAW SCHOOL, ANTHONY NIEDWIECKI and ANGELA "DARBY" DICKERSON,

        Defendants.

No.

## COMPLAINT

Plaintiff John Bergholz ("Bergholz" or "Plaintiff"), by his attorney, Thomas D. Rosenwein of Rosenwein Law Group, for his Complaint against The John Marshall Law School ("JMLS" or the "School"), Anthony Niedwiecki ("Niedwiecki") and Angela "Darby" Dickerson ("Dickerson"), states as follows.

## INTRODUCTION

1. This is an action for sex and age discrimination, including retaliation, pursuant to Titles VII and IX of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, which prohibit discrimination on the basis of sex and age, and further prohibits retaliation for opposing or making charges regarding discrimination. This action also includes pendant state claims for intentional interference with contract and prospective economic advantage against Niedwiecki.

## PARTIES

2. Bergholz, who is male and fifty-nine years age, was formerly Executive Director of Alumni Relations and Development at JMLS.

3. Previously, Bergholz had spent more than 20 years managing development efforts for higher education institutions, which began at the Northwestern University School of Law. Bergholz has focused his career on major gifts and planned giving, staff development, capital campaign work, strategic planning and international alumni relations.

4. JMLS is a not-for-profit Illinois corporation, founded in 1899 and committed to legal education. During all times pertinent to this matter, JMLS has been located at 315 South Plymouth Court, Chicago, Illinois.

5. Niedwiecki is the former Associate Dean of JMLS.

6. Dickerson is a resident and citizen of this judicial district. She is Dean of JMLS.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343. The Northern District of Illinois has personal jurisdiction over JMLS and Dickerson as both JMLS and Dickerson reside, are citizens of and/or maintain offices in the District and do business in Illinois. Niedwiecki has resided and was a citizen in the District during the period described herein. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) in that Dickerson resides in this District, JMLS's principal place of business is in this District, all Defendants, including Niedwiecki, engaged in the unlawful employment practices occurring in this District, the employment records relevant to such practice are maintained and administered in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and Bergholz was working and would still be working in this District but for the unlawful employment practices described herein.

9. Bergholz has satisfied the administrative requirements for his Title VII and ADEA claims. He timely filed an EEOC charge asserting discrimination based on sex, age and retaliation, and received a Notice of Right to Sue from the EEOC that was mailed on September 29, 2017 (the "right to sue letter"). The complaint is timely filed within 90 days of Bergholz' receipt of the right to sue letter.

## FACTS RELEVANT TO ALL COUNTS

10. Bergholz was hired by JMLS in June 2015 to serve as Executive Director of Development and Alumni Relations ("Executive Director"). At that time, the School's Dean was John Corkery ("Corkery").

11. While serving as Executive Director, Bergholz was successful in raising funds and strengthening alumni relations. For the first time in JMLS' history, Bergholz was able to achieve 100% participation of the JMLS Board in financially supporting the School. He also managed a staff of eight.

12. In the fall of 2016, Bergholz and JMLS' Intellectual Property Director met in Washington D.C. with a significant past donor to JMLS in an effort to renew her support for the School. That donor had previously been offended by racist and anti-Semitic comments made by a JMLS adjunct professor and thereafter had declined to further support the School. At the donor's specific request, the three had lunch at a restaurant in the Washington D.C. Trump Hotel.

13. Upon his return to Chicago, Bergholz reported on his meeting with the donor as part of his regularly scheduled senior staff meeting. Two hours after reporting on his meeting, Bergholz received an email from Niedwiecki, who was JMLS' Associate Dean for Academic Affairs ("Associate Dean") criticizing Bergholz for having lunched at the Trump Hotel. Niedwiecki, purporting to act in his capacity as Associate Dean, spoke to others at the School,

3

contending that Bergholz' lunch at the Trump Hotel with a donor not only reflected an endorsement of Trump as a political candidate for president, but that Bergholz was therefore anti-gay, anti-Muslim and anti-Black.[1]

14. Upon learning of Niedwiecki's comments, Bergholz complained to JMLS' human resources consultant and to Corkery about the false representation of his views and the circumstances of his lunch with the donor. However, neither took any action with respect to the Associate Dean or to correct his comments and impressions.

15. In October, 2016, at the same time as the events recited above, Corkery was in the process of retiring from his position as Dean at JMLS, and a new Dean was selected and announced, *i.e.*, Dickerson. Dickerson's appointment was effective January 1, 2017, though she effectively began as Dean in December 2016.

16. When Bergholz first met with Dickerson, she acknowledged that Niedwiecki did not like Bergholz but otherwise made no comments about the false statements made about Bergholz nor did she express any concerns with Bergholz' work as Executive Director. Dickerson subsequently acknowledged that she had been informed (on information and belief by Niedwiecki) of the Trump Hotel luncheon with the donor, the JMLS IP Director and Bergholz.

17. Shortly thereafter, in March 2017, Bergholz was invited to a lunch meeting with the JMLS Director of Diversity ("Director"). At that lunch, the Director advised Bergholz that four women on Bergholz' staff had complained about his lack of "sensitivity." The Director stressed that this was not a complaint of sexual harassment, and that no formal investigation was being opened. However, the Director did not otherwise provide any further details or explain what was meant by "insensitivity." The Director stated that the "insensitivity" allegations seemed

---

[1] In fact, one of Bergholz's grandfathers was a Muslim, and his DNA tests show genetically he is 11% African and 16% South Asian.

to have been "orchestrated."

18. No further meetings, actions or discussions with regard to the allegations of "insensitivity" were taken, and Bergholz continued to perform his duties, including his diligent efforts to introduce the new dean Dickerson to donors, VIPs and other supporters of the school.

19. Bergholz subsequently learned that the allegations of "insensitivity" came from four female members of his staff who were either (a) on progressive discipline for misrepresenting the actions of others in an open meeting and not performing adequately with regard to a particular fund-raising event, (b) angry about being asked to improve their performance for taking a month to process checks given by two trustees, or (c) angry that a performance appraisal provide by Bergholz was not at the level to which the staff member felt she was entitled (despite Bergholz have ranked her second overall and given the highest bonus, and despite being promoted and given every accommodation during pregnancy and maternity leave). Upon information and belief, the four complainers had been encouraged to make complaints by Niedwiecki, as confirmed in part by an adjunct JMLS professor who told Bergholz that he was being "profiled and targeted."

20. On April 5, 2017, Dickerson asked Bergholz to meet with her. Without any prior warning, negative evaluations or any sort of progressive discipline and due process, Dickerson announced that Bergholz was terminated from employment effective that date.

21. When Bergholz asked for an explanation, Dickerson advised him that she "did not want to incur the cost of a Title IX investigation." Dickerson then summarily dismissed Bergholz, who packed his office and left JMLS that day.

22. The Title IX investigation to which Dickerson referred would have entailed an investigation of the same "insensitivity" allegations made by Bergholz' four subordinates. Such

an investigation would have revealed that there was no basis for a claim of violation of Title IX as those allegations had no basis in fact or law, which investigation could have been conducted internally and without any significant cost to JMLS.

23. Dickerson's decision to terminate Bergholz' employment was part of a pattern and practice that she initiated upon becoming Dean, *i.e.*, to eliminate the employment of men, and particularly older men.

24. The pattern of gender bias toward men even prior to Dickerson becoming Dean has been the subject of prior litigation at the School as well as internal complaints.

25. The pattern and practice is also illustrated by Dickerson's announcement, at a faculty meeting, of a change in status for five faculty members with the status of Associate Professor Non-Tenure Track (comprised of four women and one man) All five positions were under review, but only the male professor was identified in public as the one who would not be able to re-apply for his job.

26. Similarly, in a search for a replacement for the head of HR, which now includes the role of General Counsel, the four finalists that Dickerson announced were three women and one man. Dickerson announced at a senior staff meeting that the man would not proceed to the next round.

27. Dickerson also summarily terminated the Associate Dean of Admissions following her termination of Bergholz' employment, who was also an older male staff member without tenure, similarly without cause or prior warning.

28. Further, Dickerson authored a policy prohibiting staff from dating supervisors, which she used to promote the female Registration Coordinator to the post of Assistant Registrar while terminating her boyfriend and former co-worker.

29. Dickerson has also targeted older faculty, who are tenured and not so easily dismissed, by questioning their abilities and requiring them to undertake performance improvement plans notwithstanding their years of successful teaching, scholarship and service, with threats of reduction in salaries if "improvements" are not made, with Dickerson as the sole judge of such "improvements."

30. Niedwiecki and the four subordinates were aware of Dickerson's bias, and played to that bias by communicating to her the false allegations of Bergholz' "insensitivity."

31. As a result of the actions of Defendants, Bergholz was unemployed for more than six months and lost a significant contribution from the School to his 403(b) retirement plan that he would have received in July 2017. He has mitigated his damages by taking a new job in his field, which however pays substantially less salary than that at JMLS and requires him to commute to Washington D.C. from his home in the Chicago area on a weekly basis.

**COUNT I**
**<u>VIOLATION OF TITLE VII (SEX DISCRIMINATION)</u>**

32. Plaintiff restates and incorporates by reference the allegations set forth in paragraphs 1-36 as paragraph 32 of this Count I.

33. Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment practices, and provides, in pertinent part (42 U.S.C. § 2000e-2), that it is an unlawful employment practice for an employer to "discharge any individual or otherwise to discriminate against any individual with respect to… terms, conditions, or privileges of employment because of such individual's … sex…."

34. As noted above, Bergholz has satisfied the administrative requirements for his Title VII claims. He timely filed an EEOC charge asserting discrimination based on race and

7

retaliation, and this complaint is timely filed within 90 days of Bergholz's receipt of the right to sue letter.

35. At all times pertinent to this complaint, Bergholz was within a protected class (male) as provided by Title VII.

36. During the course of his employment, Bergholz was subjected to different terms and conditions of employment because of his sex (male).

37. Defendant JMLS's and Dickerson's conduct as alleged above constitutes discrimination based upon sex in direct violation of Title VII.

38. As a result of JMLS's and Dickerson's discriminatory conduct, Bergholz has been damaged in his career and in his person and has suffered compensable damage.

**WHEREFORE,** Plaintiff John Bergholz prays for the following relief:

A. An order declaring that Defendant JMLS violated Title VII;

B. An order enjoining future violations and requiring Defendant JMLS to afford a working environment free from discrimination, including discrimination based on sex;

C. Reinstatement to his position as Executive Director of Development and Alumni Relations, including all benefits that Bergholz would have had but for Defendant JMLS's illegal conduct;

D. Payment of all lost, past and future wages and benefits (including any and all types of compensation and benefits, back pay, and front pay);

E. Treble damages due to the willful nature of Defendant JMLS's conduct;

F. Compensatory, emotional and mental distress damages; reputational, punitive or exemplary damages; statutory and liquidated damages; and civil penalties;

G. Payment of Bergholz's attorney's fees and costs of litigation (including statutory fees and expert witness fees);

H. Pre- and post-judgment interest; and

I. All other relief, whether legal or equitable, that this Court may deem appropriate.

## COUNT II
## <u>VIOLATION OF ADEA</u>

39. Plaintiff restates and incorporates by reference the allegations set forth in paragraphs 1-31 as paragraph 39 of this Count II.

40. Pursuant to the ADEA, 29 U.S.C. ¶623(a)(1), it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

41. Bergholz was terminated from employment as a result of his age (59) in violation of the ADEA.

42. As alleged, *infra*, these actions occurred following Dickerson's appointment as Dean.

43. JMLS's and Dickerson's acts and omissions were materially adverse to Bergholz, resulting in the termination of his employment.

**WHEREFORE,** Plaintiff John Bergholz prays for the following relief:

A. An order declaring that Defendant JMLS violated the ADEA;

B. An order enjoining future violations and requiring Defendant JMLS to afford a working environment free from discrimination based on age;

9

C. Reinstatement to his position as Executive Director of Development and Alumni Relations, including all benefits that Bergholz would have had but for Defendant JMLS's and Dickerson's illegal conduct;

D. Payment of all lost, past and future wages and benefits (including any and all types of compensation and benefits, back pay, and front pay);

E. Treble damages due to the willful nature of Defendant JMLS's and Dickerson's conduct;

F. Compensatory, emotional and mental distress damages; reputational, punitive or exemplary damages; statutory and liquidated damages; and civil penalties;

G. Payment of Plaintiff's attorney's fees and costs of litigation (including statutory fees and expert witness fees);

H. Pre- and post-judgment interest; and

I. All other relief, whether legal or equitable, that this Court may deem appropriate.

## COUNT III
## VIOLATION OF TITLE IX

44. Plaintiff restates and incorporates by reference the allegations set forth in paragraphs 1-31 as paragraph 44 of this Count III.

45. Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

46. JMLS accepts and receives assistance from the federal government for, *inter alia*, educational scholarships, grants and loans.

47. Such funding includes federal and state funds through the U.S. Department of Education and other federal agencies, and is based, in part, on the absence of discrimination at the School.

48. JMLS and Dickerson denied Bergholz participation in and benefits of JMLS's programs by subjecting him to discrimination based on his sex when they deliberately and intentionally refused to investigate the false claims of "insensitivity" made against him and terminated his employment.

49. JMLS and Dickerson treated Bergholz differently from female employees.

50. As a result of Defendants' discrimination, Bergholz has suffered damages in the nature of loss of employment, harm to his career, emotional distress, embarrassment and the deprivation of his civil rights.

**WHEREFORE,** Plaintiff John Bergholz prays for the following relief:

A. An order declaring that Defendants violated Title IX;

B. An order enjoining future violations and requiring Defendant JMLS to afford a working environment free from discrimination, including discrimination based on sex;

C. Reinstatement to his position as Executive Director of Development and Alumni Relations, including all benefits that Bergholz would have had but for Defendant JMLS's and Dickerson's illegal conduct;

D. Payment of all lost, past and future wages and benefits (including any and all types of compensation and benefits, back pay, and front pay);

E. Treble damages due to the willful nature of Defendants' conduct;

F. Compensatory, emotional and mental distress damages; reputational, punitive or exemplary damages; statutory and liquidated damages; and civil penalties;

G. Payment of Plaintiff's attorney's fees and costs of litigation (including statutory fees and expert witness fees);

H. Pre- and post-judgment interest; and

I. All other relief, whether legal or equitable, that this Court may deem appropriate.

## COUNT V
## INTENTIONAL INTERFERENCE WITH CONTRACT

51. Plaintiff restates and incorporates by reference the allegations set forth in paragraphs 1-31 as paragraph 51 of this Count V.

52. Bergholz had a valid contract with JMLS.

53. Niedwiecki was aware of the contract between JMLS and Plaintiff, and specifically that Bergholz was entitled to continued employment.

54. Niedwiecki intentionally and unjustifiably induced JMLS to breach its contract with Bergholz by falsely alleging that he was anti-gay, anti-Muslim and anti-Black. In addition, Niedwiecki intentionally and unjustifiably induced four female staff members who reported to Bergholz to make false allegations of "insensitivity," which Niedwiecki knew would find a sympathetic hearing by Dean Dickerson regardless of whether there was any basis in fact or law for such allegations. Niedwiecki knew or should have known that having lunch at a Trump Hotel as requested by a donor did not make Bergholz anti-gay, anti-Muslim or anti-Black, but in fact Bergholz was the object of harassment which Niedwiecki orchestrated.

55. Niedwiecki was not privileged to induce the breach of contract. He interfered with Bergholz's contract in order to harm Bergholz by causing him to be terminated from employment.

56. As a result of Niedwiecki's discrimination, Bergholz has suffered damages in the nature of loss of employment, harm to his career, emotional distress, embarrassment and the

12

deprivation of his civil rights.

**WHEREFORE**, Plaintiff John Bergholz prays for relief against Defendant Niedwiecki in the amount of $1,000,000 in compensatory damages, $3,000,000 in punitive damages, plus interest and costs, and such other relief as this Court may deem proper and just.

### COUNT VI
### INTENTIONAL INTERFERENCE WITH
### PROSPECTIVE ECONOMIC ADVANTAGE

57. Plaintiff restates and incorporates by reference the allegations set forth in paragraphs 1-31 as paragraph 57 of this Count VI.

58. As a result of Bergholz's accomplishments and his fulfillment of JMLS's criteria for performance as an Executive Director, Bergholz had a reasonable expectancy of entering into a continuing and long-term relationship with JMLS.

59. Niedwiecki was well aware of Bergholz's reasonable expectancy as Niedwiecki knew Bergholz had met all criteria for an Executive Director under JMLS's standards.

60. With full knowledge of Bergholz's expectancy, Niedwiecki intentionally induced JMLS to deny Bergholz employment by falsely alleging that he was anti-gay, anti-Muslim and anti-Black. In addition, Niedwiecki intentionally and unjustifiably induced four female staff members who reported to Bergholz to make false allegations of "insensitivity," which Niedwiecki knew would find a sympathetic hearing by Dean Dickerson regardless of whether there was any basis in fact or law for such allegations. Niedwiecki knew or should have known that having lunch at a Trump Hotel as suggested by a donor did not make Bergholz anti-gay, anti-Muslim or anti-Black, but in fact Bergholz was the object of harassment which Niedwiecki orchestrated.

61. Niedwiecki knew that interference with Bergholz's continued employment was certain or substantially certain to occur as a result of Niedwiecki's conduct. Indeed, the primary purpose of Niedwiecki's conduct was to deprive Bergholz of his expected long-term relationship with JMLS.

62. As a direct result of Niedwiecki's conduct, JMLS terminated Bergholz' employment and denied him a continuing relationship with JMLS, which was the intended result of Niedwiecki's conduct.

63. Bergholz has been injured by the Niedwiecki's intentional interference with Bergholz's prospective economic advantage in that he was rendered unemployed at JMLS, was unemployed for months and has only obtained a position that pays less than his position at JMLS and has suffered reputational damage.

**WHEREFORE**, Plaintiff John Bergholz prays for relief against Defendant Niedwiecki in the amount of $1,000,000 in compensatory damages, $3,000,000 in punitive damages, plus interest and costs, and such other relief as this Court may deem proper and just.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS**

JOHN BERGHOLZ

Dated: December 29, 2017          By:_____Thomas D. Rosenwein_____
                                          One of His Attorneys

Thomas D. Rosenwein
Rosenwein Law Group
53 W. Jackson Blvd., Suite 1205
Chicago, Illinois 60604
(312) 346-1080
E-Mail: trosenwein@rlawgrp.com
ARDC No. 2391597