**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN BERGHOLZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 1:18-cv-00003 |
| THE JOHN MARSHALL LAW SCHOOL, | ) | |
| ANTHONY NIEDWIECKI and ANGELA | ) | Honorable Judge Gary Feinerman |
| DARBY DICKERSON, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT THE JOHN MARSHALL LAW SCHOOL'S
ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant THE JOHN MARSHALL LAW SCHOOL ("JMLS"), by its attorneys OGLETREE,

DEAKINS, NASH, SMOAK & STEWART, P.C., for its Answer and Defenses to Plaintiff's Complaint,

state as follows:

**INTRODUCTION**

1.      This is an action for sex and age discrimination, including retaliation, pursuant to
Titles VII and IX of the Civil Rights Act of 1964, as amended, and the Age Discrimination in
Employment Act of 1967, which prohibit discrimination on the basis of sex and age, and further
prohibits retaliation for opposing or making charges regarding discrimination. This action also
includes pendant state claims for intentional interference with contract and prospective economic
advantage against Niedwiecki.

**ANSWER:**      JMLS admits only that Plaintiff alleges the claims described in Paragraph

1, but denies that it engaged in or is liable for any wrongdoing, and denies the remaining allegations

in Paragraph 1.

**PARTIES**

2.      Bergholz, who is male and fifty-nine years age, was formerly Executive Director
of Alumni Relations and Development at JMLS.

**ANSWER:**      JMLS admits the allegations in Paragraph 2.

3.     Previously, Bergholz had spent more than 20 years managing development efforts for higher education institutions, which began at the Northwestern University School of Law. Bergholz has focused his career on major gifts and planned giving, staff development, capital campaign work, strategic planning and international alumni relations.

**ANSWER:**     Upon information and belief, relying solely on Plaintiff's representations, JMLS admits that Plaintiff formerly worked at Northwestern University School of Law and held development roles prior to his employment with JMLS.  JMLS denies the remaining allegations in Paragraph 3.

4.     JMLS is a not-for-profit Illinois corporation, founded in 1899 and committed to legal education. During all times pertinent to this matter, JMLS has been located at 315 South Plymouth Court, Chicago, Illinois.

**ANSWER:**     JMLS admits the allegations in Paragraph 4.

5.     Niedwiecki is the former Associate Dean of JMLS.

**ANSWER**:     JMLS admits the allegations in Paragraph 5.

6.     Dickerson is a resident and citizen of this judicial district. She is Dean of JMLS.

**ANSWER**:     JMLS admits the allegations in Paragraph 6.

## JURISDICTION & VENUE

7.     This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343. The Northern District of Illinois has personal jurisdiction over JMLS and Dickerson as both JMLS and Dickerson reside, are citizens of and/or maintain offices in the District and do business in Illinois. Niedwiecki has resided and was a citizen in the District during the period described herein. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a)

**ANSWER:**     JMLS admits only that 28 U.S.C.  §§ 1331 and 1343 confer jurisdiction over Plaintiff's claims against JMLS, and that the Court has personal jurisdiction over JMLS.  JMLS denies that Plaintiff can bring claims against it, denies that it engaged in or is liable for any unlawful conduct and that Plaintiff is entitled to any relief, and denies the remaining allegations directed at JMLS in Paragraph 7.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) in that Dickerson resides in this District, JMLS's principal place of business is in this District, all Defendants, including Niedwiecki, engaged in the unlawful employment practices occurring in this District, the employment records relevant to such practice are maintained and administered in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and Bergholz was working and would still be working in this District but for the unlawful employment practices described herein.

**ANSWER:**     JMLS admits only that if this Court has jurisdiction over Plaintiff's claims against JMLS, and if Plaintiff could bring such claims against it, venue would be proper in this Court.  JMLS denies the remaining allegations directed at it in Paragraph 8.

9.      Bergholz has satisfied the administrative requirements for his Title VII and ADEA claims. He timely filed an EEOC charge asserting discrimination based on sex, age and retaliation, and received a Notice of Right to Sue from the EEOC that was mailed on September 29, 2017 (the "right to sue letter"). The complaint is timely filed within 90 days of Bergholz' receipt of the right to sue letter.

**ANSWER:**     JMLS admits that Plaintiff filed an EEOC charge asserting discrimination based on sex, and admits that the EEOC issued a Dismissal and Notice of Rights dated September 29, 2017.  JMLS lacks knowledge or information sufficient to form a belief as to when Plaintiff received the Dismissal and Notice of Rights, and therefore denies that allegation.  JMLS denies the remaining allegations in Paragraph 9.

## FACTS RELEVANT TO ALL COUNTS

10.      Bergholz was hired by JMLS in June 2015 to serve as Executive Director of Development and Alumni Relations ("Executive Director"). At that time, the School's Dean was John Corkery ("Corkery").

**ANSWER:**     JMLS admits the allegations in Paragraph 10.

11.      While serving as Executive Director, Bergholz was successful in raising funds and strengthening alumni relations. For the first time in JMLS' history, Bergholz was able to achieve 100% participation of the JMLS Board in financially supporting the School. He also managed a staff of eight.

**ANSWER:**     JMLS denies the allegations in Paragraph 11.

12.      In the fall of 2016, Bergholz and JMLS' Intellectual Property Director met in Washington D.C. with a significant past donor to JMLS in an effort to renew her support for the

School. That donor had previously been offended by racist and anti-Semitic comments made by a JMLS adjunct professor and thereafter had declined to further support the School. At the donor's specific request, the three had lunch at a restaurant in the Washington D.C. Trump Hotel.

**ANSWER:**   JMLS admits that Plaintiff took an alumna and JMLS's Director of the Center for Intellectual Property, Information & Privacy Law to lunch at the Trump Hotel in Washington, D.C. on October 27, 2016.  Upon information and belief, relying solely on Plaintiff's representations, JMLS admits that the alumna had previously told Plaintiff that a faculty member had made comments that offended her.  Answering further, the alumna also told Plaintiff that the Dean at that time had appropriately dealt with that situation.  JMLS denies the remaining allegations in Paragraph 12.

13.    Upon his return to Chicago, Bergholz reported on his meeting with the donor as part of his regularly scheduled senior staff meeting. Two hours after reporting on his meeting, Bergholz received an email from Niedwiecki, who was JMLS' Associate Dean for Academic Affairs ("Associate Dean") criticizing Bergholz for having lunched at the Trump Hotel. Niedwiecki, purporting to act in his capacity as Associate Dean, spoke to others at the School, contending that Bergholz' lunch at the Trump Hotel with a donor not only reflected an endorsement of Trump as a political candidate for president, but that Bergholz was therefore anti-gay, anti-Muslim and anti-Black.[1]

**ANSWER:**   JMLS admits that Plaintiff reported at a senior staff meeting that he took a donor to the restaurant at the Trump Hotel in Washington, D.C., and admits that Dean Niedwiecki sent Plaintiff an email following the meeting.  JMLS denies the allegations in Paragraph 13 that purport to characterize or summarize the contents of that email, as such document speaks for itself and must be read in its entirety.  JMLS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Footnote 1 of Paragraph 13, and therefore denies them.  JMLS denies the remaining allegations in Paragraph 13.

14.    Upon learning of Niedwiecki's comments, Bergholz complained to JMLS' human resources consultant and to Corkery about the false representation of his views and the

---

[1] In fact, one of Bergholz's grandfathers was a Muslim, and his DNA tests show genetically he is 11% African and 16% South Asian.

circumstances of his lunch with the donor. However, neither took any action with respect to the Associate Dean or to correct his comments and impressions.

**ANSWER:** JMLS denies the allegations in Paragraph 14.

15. In October, 2016, at the same time as the events recited above, Corkery was in the process of retiring from his position as Dean at JMLS, and a new Dean was selected and announced, *i.e.*, Dickerson. Dickerson's appointment was effective January 1, 2017, though she effectively began as Dean in December 2016.

**ANSWER:** JMLS admits that in October 2016, Dean Dickerson was selected to become

Dean following Dean Corkery's retirement, and admits that Dean Dickerson became Dean

effective December 19, 2016. JMLS denies the remaining allegations in Paragraph 15.

16. When Bergholz first met with Dickerson, she acknowledged that Niedwiecki did not like Bergholz but otherwise made no comments about the false statements made about Bergholz nor did she express any concerns with Bergholz' work as Executive Director. Dickerson subsequently acknowledged that she had been informed (on information and belief by Niedwiecki) of the Trump Hotel luncheon with the donor, the JMLS IP Director and Bergholz.

**ANSWER:** JMLS admits that when Plaintiff first met with Dean Dickerson, she did not

express any concerns with Plaintiff's work as Executive Director, and admits that Dean

Niedwiecki informed Dean Dickerson that Plaintiff took a donor to a Trump Hotel. JMLS denies

the remaining allegations in Paragraph 16.

17. Shortly thereafter, in March 2017, Bergholz was invited to a lunch meeting with the JMLS Director of Diversity ("Director"). At that lunch, the Director advised Bergholz that four women on Bergholz' staff had complained about his lack of "sensitivity." The Director stressed that this was not a complaint of sexual harassment, and that no formal investigation was being opened. However, the Director did not otherwise provide any further details or explain what was meant by "insensitivity." The Director stated that the "insensitivity" allegations seemed to have been "orchestrated."

**ANSWER:** JMLS admits that then Director of Diversity invited Plaintiff to lunch in

March 2017, and admits that female employees who reported to Plaintiff complained about

Plaintiff. JMLS denies the remaining allegations in Paragraph 17.

18. No further meetings, actions or discussions with regard to the allegations of "insensitivity" were taken, and Bergholz continued to perform his duties, including his diligent efforts to introduce the new dean Dickerson to donors, VIPs and other supporters of the school.

**ANSWER:**     JMLS denies the allegations in Paragraph 18.

19.     Bergholz subsequently learned that the allegations of "insensitivity" came from four female members of his staff who were either (a) on progressive discipline for misrepresenting the actions of others in an open meeting and not performing adequately with regard to a particular fund-raising event, (b) angry about being asked to improve their performance for taking a month to process checks given by two trustees, or (c) angry that a performance appraisal provide [sic] by Bergholz was not at the level to which the staff member felt she was entitled (despite Bergholz have ranked her second overall and given the highest bonus, and despite being promoted and given every accommodation during pregnancy and maternity leave). Upon information and belief, the four complainers had been encouraged to make complaints by Niedwiecki, as confirmed in part by an adjunct JMLS professor who told Bergholz that he was being "profiled and targeted."

**ANSWER:**     JMLS admits that female employees who reported to Plaintiff complained about Plaintiff, but denies the remaining allegations in Paragraph 19.

20.     On April 5, 2017, Dickerson asked Bergholz to meet with her. Without any prior warning, negative evaluations or any sort of progressive discipline and due process, Dickerson announced that Bergholz was terminated from employment effective that date.

**ANSWER:**     JMLS admits that Dean Dickerson terminated Plaintiff's employment on April 5, 2017 effective immediately, but denies the remaining allegations in Paragraph 20.

21.     When Bergholz asked for an explanation, Dickerson advised him that she "did not want to incur the cost of a Title IX investigation." Dickerson then summarily dismissed Bergholz, who packed his office and left JMLS that day.

**ANSWER:**     JMLS admits Dean Dickerson told Plaintiff that she did not want to conduct a costly Title IX investigation because she had determined that his performance was not satisfactory, and admits that Plaintiff left JMLS on April 5, 2017, but denies the remaining allegations in Paragraph 21.

22.     The Title IX investigation to which Dickerson referred would have entailed an investigation of the same "insensitivity" allegations made by Bergholz' four subordinates. Such an investigation would have revealed that there was no basis for a claim of violation of Title IX as those allegations had no basis in fact or law, which investigation could have been conducted internally and without any significant cost to JMLS.

**ANSWER:**     JMLS admits that a Title IX investigation would have involved complaints about Plaintiff, but denies the remaining allegations in Paragraph 22.

23.     Dickerson's decision to terminate Bergholz' employment was part of a pattern and practice that she initiated upon becoming Dean, *i.e.*, to eliminate the employment of men, and particularly older men.

**ANSWER:**     JMLS denies the allegations in Paragraph 23.

24.     The pattern of gender bias toward men even prior to Dickerson becoming Dean has been the subject of prior litigation at the School as well as internal complaints.

**ANSWER:**     JMLS denies the allegations in Paragraph 24.

25.     The pattern and practice is also illustrated by Dickerson's announcement, at a faculty meeting, of a change in status for five faculty members with the status of Associate Professor Non-Tenure Track (comprised of four women and one man). All five positions were under review, but only the male professor was identified in public as the one who would not be able to re-apply for his job.

**ANSWER:**     JMLS denies the allegations in Paragraph 25.

26.     Similarly, in a search for a replacement for the head of HR, which now includes the role of General Counsel, the four finalists that Dickerson announced were three women and one man. Dickerson announced at a senior staff meeting that the man would not proceed to the next round.

**ANSWER:**     JMLS admits that there were four original finalists for the position of General Counsel and Assistant Dean for Human Resources and admits that three of the four original finalists were women and one of the four original finalists was male.  JMLS denies the remaining allegations in Paragraph 26.

27.     Dickerson also summarily terminated the Associate Dean of Admissions following her termination of Bergholz' employment, who was also an older male staff member without tenure, similarly without cause or prior warning.

**ANSWER:**     JMLS denies the allegations in Paragraph 27.

28.     Further, Dickerson authored a policy prohibiting staff from dating supervisors, which she used to promote the female Registration Coordinator to the post of Assistant Registrar while terminating her boyfriend and former co-worker.

**ANSWER:**     JMLS denies the allegations in Paragraph 28.

29.     Dickerson has also targeted older faculty, who are tenured and not so easily dismissed, by questioning their abilities and requiring them to undertake performance improvement plans notwithstanding their years of successful teaching, scholarship and service,

with threats of reduction in salaries if "improvements" are not made, with Dickerson as the sole judge of such "improvements."

**ANSWER:** JMLS denies the allegations in Paragraph 29.

30. Niedwiecki and the four subordinates were aware of Dickerson's bias, and played to that bias by communicating to her the false allegations of Bergholz' "insensitivity."

**ANSWER:** JMLS denies the allegations in Paragraph 30.

31. As a result of the actions of Defendants, Bergholz was unemployed for more than six months and lost a significant contribution from the School to his 403(b) retirement plan that he would have received in July 2017. He has mitigated his damages by taking a new job in his field, which however pays substantially less salary than that at JMLS and requires him to commute to Washington D.C. from his home in the Chicago area on a weekly basis.

**ANSWER:** JMLS denies the allegations in Paragraph 31.

## COUNT I
## VIOLATION OF TITLE VII (SEX DISCRIMINATION)

32. Plaintiff restates and incorporates by reference the allegations set forth in paragraphs 1-36 [sic] as paragraph 32 of this Count I.

**ANSWER:** JMLS restates and incorporates by reference their answers to Paragraphs 1-31 as if fully stated herein.

33. Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment practices, and provides, in pertinent part (42 U.S.C. § 2000e-2), that it is an unlawful employment practice for an employer to "discharge any individual or otherwise to discriminate against any individual with respect to... terms, conditions, or privileges of employment because of such individual's ... sex....".

**ANSWER:** JMLS admits that Paragraph 33 contains a summary and incomplete excerpt of Title VII, and denies the remaining allegations in Paragraph 33.

34. As noted above, Bergholz has satisfied the administrative requirements for his Title VII claims. He timely filed an EEOC charge asserting discrimination based on race and retaliation, and this complaint is timely filed within 90 days of Bergholz's receipt of the right to sue letter.

**ANSWER:** JMLS admits that Plaintiff filed an EEOC charge naming JMLS as respondent, but denies that his charge asserted discrimination based on race and retaliation. JMLS lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegation

that his complaint is timely filed within 90 days of his receipt of the right to sue letter, and therefore

denies it. JMLS denies the remaining allegations in Paragraph 34.

35.    At all times pertinent to this complaint, Bergholz was within a protected class (male) as provided by Title VII.

**ANSWER:**    JMLS admits that Plaintiff is male, but denies the remaining allegations in

Paragraph 35.

36.    During the course of his employment, Bergholz was subjected to different terms and conditions of employment because of his sex (male).

**ANSWER:**    JMLS denies the allegations in Paragraph 36.

37.    Defendant JMLS's and Dickerson's conduct as alleged above constitutes discrimination based upon sex in direct violation of Title VII.

**ANSWER:**    JMLS denies the allegations in Paragraph 37.

38.    As a result of JMLS's and Dickerson's discriminatory conduct, Bergholz has been damaged in his career and in his person and has suffered compensable damage.

**ANSWER:**    JMLS denies the allegations in Paragraph 38.

**WHEREFORE,** Plaintiff John Bergholz prays for the following relief:

A.    An order declaring that Defendant JMLS violated Title VII;

B.    An order enjoining future violations and requiring Defendant JMLS to afford a working environment free from discrimination, including discrimination based on sex;

C.    Reinstatement to his position as Executive Director of Development and Alumni Relations, including all benefits that Bergholz would have had but for Defendant JMLS's illegal conduct;

D.    Payment of all lost, past and future wages and benefits (including any and all types of compensation and benefits, back pay, and front pay);

E.    Treble damages due to the willful nature of Defendant JMLS's conduct;

F.    Compensatory, emotional and mental distress damages; reputational, punitive or exemplary damages; statutory and liquidated damages; and civil penalties;

G.    Payment of Bergholz's attorney's fees and costs of litigation (including statutory fees and expert witness fees);

H.    Pre- and post-judgment interest; and

I.    All other relief, whether legal or equitable, that this Court may deem appropriate.

**ANSWER:**    JMLS denies that it engaged in or is liable for any unlawful conduct and

that Plaintiff is entitled to any relief.

## COUNT II
## <u>VIOLATION OF ADEA</u>

39.    Plaintiff restates and incorporates by reference the allegations set forth in paragraphs 1-31 as paragraph 39 of this Count II.

**ANSWER:**    JMLS restates and incorporates by reference its answers to Paragraphs 1-31

as if fully stated herein.

40.    Pursuant to the ADEA, 29 U.S.C. ¶623(a)(1), it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

**ANSWER:**    JMLS admits that Paragraph 40 contains an incomplete excerpt of the

ADEA, but denies the remaining allegations in Paragraph 40.

41.    Bergholz was terminated from employment as a result of his age (59) in violation of the ADEA.

**ANSWER:**    JMLS denies the allegations in Paragraph 41.

42.    As alleged, *infra*, these actions occurred following Dickerson's appointment as Dean.

**ANSWER:**    JMLS admits only that Plaintiff's employment was terminated after Dean

Dickerson became Dean of JMLS, but denies the remaining allegations in Paragraph 42.

43.    JMLS's and Dickerson's acts and omissions were materially adverse to Bergholz, resulting in the termination of his employment.

**ANSWER:**    JMLS denies the allegations in Paragraph 43.

**WHEREFORE,** Plaintiff John Bergholz prays for the following relief:

A.      An order declaring that Defendant JMLS violated the ADEA;

B.      An order enjoining future violations and requiring Defendant JMLS to afford a working environment free from discrimination based on age;

C.      Reinstatement to his position as Executive Director of Development and Alumni Relations, including all benefits that Bergholz would have had but for Defendant JMLS's and Dickerson's illegal conduct;

D.      Payment of all lost, past and future wages and benefits (including any and all types of compensation and benefits, back pay, and front pay);

E.      Treble damages due to the willful nature of Defendant JMLS's and Dickerson's conduct;

F.      Compensatory, emotional and mental distress damages; reputational, punitive or exemplary damages; statutory and liquidated damages; and civil penalties;

G.      Payment of Plaintiff's attorney's fees and costs of litigation (including statutory fees and expert witness fees);

H.      Pre- and post-judgment interest; and

I.      All other relief, whether legal or equitable, that this Court may deem appropriate.

    **ANSWER:**    JMLS denies that it engaged in or is liable for any unlawful conduct and that Plaintiff is entitled to any relief.

## COUNT III
## VIOLATION OF TITLE IX

    44.    Plaintiff restates and incorporates by reference the allegations set forth in paragraphs 1-31 as paragraph 44 of this Count III.

    **ANSWER:**    JMLS restates and incorporates by reference their answers to Paragraphs 1-31 as if fully stated herein.

    45.    Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

**ANSWER:**    JMLS admits that Paragraph 45 contains an incomplete excerpt of Title IX, but denies the remaining allegations in Paragraph 45.

46.    JMLS accepts and receives assistance from the federal government for, *inter alia*, educational scholarships, grants and loans.

**ANSWER:**    JMLS admits that it participates in Title IV, HEA and also receives federal funds for its Fair Housing Clinic through a grant from HUD.  JMLS denies the remaining allegations in Paragraph 46.

47.    Such funding includes federal and state funds through the U.S. Department of Education and other federal agencies, and is based, in part, on the absence of discrimination at the School.

**ANSWER:**    The allegations in Paragraph 47 call for a legal conclusion and no response is required.  To the extent a response is required, JMLS denies the allegations in Paragraph 47.

48.    JMLS and Dickerson denied Bergholz participation in and benefits of JMLS's programs by subjecting him to discrimination based on his sex when they deliberately and intentionally refused to investigate the false claims of "insensitivity" made against him and terminated his employment.

**ANSWER:**    JMLS denies the allegations in Paragraph 48.

49.    JMLS and Dickerson treated Bergholz differently from female employees.

**ANSWER:**    JMLS denies the allegations in Paragraph 49.

50.    As a result of Defendants' discrimination, Bergholz has suffered damages in the nature of loss of employment, harm to his career, emotional distress, embarrassment and the deprivation of his civil rights.

**ANSWER:**    JMLS denies the allegations in Paragraph 50.

**WHEREFORE,** Plaintiff John Bergholz prays for the following relief:

A.    An order declaring that Defendants violated Title IX;

B.    An order enjoining future violations and requiring Defendant JMLS to afford a working environment free from discrimination, including discrimination based on sex;

C.     Reinstatement to his position as Executive Director of Development and Alumni Relations, including all benefits that Bergholz would have had but for Defendant JMLS's and Dickerson's illegal conduct;

D.     Payment of all lost, past and future wages and benefits (including any and all types of compensation and benefits, back pay, and front pay);

E.     Treble damages due to the willful nature of Defendants' conduct;

F.     Compensatory, emotional and mental distress damages; reputational, punitive or exemplary damages; statutory and liquidated damages; and civil penalties;

G.     Payment of Plaintiff's attorney's fees and costs of litigation (including statutory fees and expert witness fees);

H.     Pre- and post-judgment interest; and

I.     All other relief, whether legal or equitable, that this Court may deem appropriate.

**ANSWER:**     JMLS denies that it engaged in or is liable for any unlawful conduct and that Plaintiff is entitled to any relief.

## COUNT V [sic]
## INTENTIONAL INTERFERENCE WITH CONTRACT

51.     Plaintiff restates and incorporates by reference the allegations set forth in paragraphs 1-31 as paragraph 51 of this Count V.

**ANSWER:**     Count V is not brought against JMLS and no response is required.

52.     Bergholz had a valid contract with JMLS.

**ANSWER:**     Count V is not brought against JMLS and no response is required.

53.     Niedwiecki was aware of the contract between JMLS and Plaintiff, and specifically that Bergholz was entitled to continued employment.

**ANSWER:**     Count V is not brought against JMLS and no response is required.

54.     Niedwiecki intentionally and unjustifiably induced JMLS to breach its contract with Bergholz by falsely alleging that he was anti-gay, anti-Muslim and anti-Black. In addition, Niedwiecki intentionally and unjustifiably induced four female staff members who reported to Bergholz to make false allegations of "insensitivity," which Niedwiecki knew would find a sympathetic hearing by Dean Dickerson regardless of whether there was any basis in fact or law for such allegations. Niedwiecki knew or should have known that having lunch at a Trump Hotel as requested by a donor did not make Bergholz anti-gay, anti-Muslim or anti-Black, but in fact Bergholz was the object of harassment which Niedwiecki orchestrated.

13

**ANSWER:**     Count V is not brought against JMLS and no response is required.

55.     Niedwiecki was not privileged to induce the breach of contract. He interfered with Bergholz's contract in order to harm Bergholz by causing him to be terminated from employment.

**ANSWER:**     Count V is not brought against JMLS and no response is required.

56.     As a result of Niedwiecki's discrimination, Bergholz has suffered damages in the nature of loss of employment, harm to his career, emotional distress, embarrassment and the deprivation of his civil rights.

**ANSWER:**     Count V is not brought against JMLS and no response is required.

WHEREFORE, Plaintiff John Bergholz prays for relief against Defendant Niedwiecki in the amount of $1,000,000 in compensatory damages, $3,000,000 in punitive damages, plus interest and costs, and such other relief as this Court may deem proper and just.

**ANSWER:**     Count V is not brought against JMLS and no response is required.

## COUNT VI
## INTENTIONAL INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE

57.     Plaintiff restates and incorporates by reference the allegations set forth in paragraphs 1-31 as paragraph 57 of this Count VI.

**ANSWER:**     Count VI is not brought against JMLS and no response is required.

58.     As a result of Bergholz's accomplishments and his fulfillment of JMLS's criteria for performance as an Executive Director, Bergholz had a reasonable expectancy of entering into a continuing and long-term relationship with JMLS.

**ANSWER:**     Count VI is not brought against JMLS and no response is required.

59.     Niedwiecki was well aware of Bergholz's reasonable expectancy as Niedwiecki knew Bergholz had met all criteria for an Executive Director under JMLS's standards.

**ANSWER:**     Count VI is not brought against JMLS and no response is required.

60.     With full knowledge of Bergholz's expectancy, Niedwiecki intentionally induced JMLS to deny Bergholz employment by falsely alleging that he was anti-gay, anti-Muslim and anti-Black. In addition, Niedwiecki intentionally and unjustifiably induced four female staff members who reported to Bergholz to make false allegations of "insensitivity," which Niedwiecki knew would find a sympathetic hearing by Dean Dickerson regardless of whether there was any basis in fact or law for such allegations. Niedwiecki knew or should have known that having lunch at a Trump Hotel as suggested by a donor did not make Bergholz anti-gay,

anti-Muslim or anti-Black, but in fact Bergholz was the object of harassment which Niedwiecki orchestrated.

      **ANSWER:**    Count VI is not brought against JMLS and no response is required.

     61.    Niedwiecki knew that interference with Bergholz's continued employment was certain or substantially certain to occur as a result of Niedwiecki's conduct. Indeed, the primary purpose of Niedwiecki's conduct was to deprive Bergholz of his expected long-term relationship with JMLS.

      **ANSWER:**    Count VI is not brought against JMLS and no response is required.

     62.    As a direct result of Niedwiecki's conduct, JMLS terminated Bergholz' employment and denied him a continuing relationship with JMLS, which was the intended result of Niedwiecki's conduct.

      **ANSWER:**    Count VI is not brought against JMLS and no response is required.

     63.    Bergholz has been injured by the Niedwiecki's intentional interference with Bergholz's prospective economic advantage in that he was rendered unemployed at JMLS, was unemployed for months and has only obtained a position that pays less than his position at JMLS and has suffered reputational damage.

      **ANSWER:**    Count VI is not brought against JMLS and no response is required.

     **WHEREFORE**, Plaintiff John Bergholz prays for relief against Defendant Niedwiecki in the amount of $1,000,000 in compensatory damages, $3,000,000 in punitive damages, plus interest and costs, and such other relief as this Court may deem proper and just.

      **ANSWER:**    Count VI is not brought against JMLS and no response is required.

## AFFIRMATIVE DEFENSES

     JMLS asserts the following affirmative and other defenses without assuming any burdens of production, persuasion, or proof that, pursuant to law, are not legally assigned to it and are Plaintiff's burden to prove. Plaintiff's claims are vague and render it impossible to identify every possible affirmative or other defense, and thus JMLS expressly reserves its right to assert additional defenses should the precise nature of Plaintiff's claims become clear.

1.      Plaintiff has failed to state facts sufficient to constitute a cause of action for the reasons stated in JMLS's Combined Fed. R. Civ. P. 12(b)(6) and 12(b)(1) Motion to Dismiss Plaintiff's Complaint and Fed. R. Civ. P. 12(f). (ECF Nos. 11-12).

2.      Plaintiff's claims are barred, in whole or in part, to the extent that they exceed the scope of or are inconsistent with the charge of discrimination Plaintiff filed with the Equal Employment Opportunity Commission or the Illinois Department of Human Rights.

3.      Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff failed to exhaust administrative remedies with respect to such claims at the Equal Employment Opportunity Commission or the Illinois Department of Human Rights.

4.      Plaintiff's claims are barred, in whole or in part, to the extent that they exceed the applicable statute of limitations.

5.      JMLS's employment decisions with respect to Plaintiff were at all times motivated by legitimate, non-discriminatory, non-pretextual business reasons.

6.      JMLS acted at all times on the basis of a good faith, reasonable belief that its employment decisions with respect to Plaintiff were in compliance with federal and state law.

7.      If any improper, illegal, or discriminatory act was taken by any JMLS employee against Plaintiff, it was taken outside the course and scope of that employee's employment, contrary to JMLS's policies, and was not ratified, confirmed, or approved by JMLS.  Thus, any such actions cannot be attributed or imputed to JMLS.

8.      Plaintiff is barred from recovering damages to the extent he has failed to mitigate his damages, including the failure of Plaintiff to accept work or to exercise diligence in seeking employment.

9.      Plaintiff is barred from recovering damages to the extent he has already mitigated his damages, including by accepting other employment.

10.     Plaintiff's pre-existing emotional, psychological, and physical condition prior to the alleged act(s) of misconduct was such that JMLS did not proximately cause or contribute in any manner to Plaintiff's alleged injuries or damages, and JMLS may not be held liable for any such alleged injuries or damages.

11.     Plaintiff's claims for punitive damages fail because JMLS did not act with malice or reckless indifference to Plaintiff's federally protected rights within the meaning of 42 U.S.C. § 1981a(b)(1).

12.     The allegations of Plaintiff's Complaint are insufficient to entitle him to punitive or other damages.

13.     JMLS cannot be vicariously liable for punitive damages in light of its good faith efforts to comply with the statutes at issue in this case.  *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999).

14.     Any imposition of punitive damages in this case would contravene JMLS's constitutional right to substantive and procedural due process of law under the Fifth Amendment of the Constitution of the United States.

WHEREFORE, JMLS requests that this Complaint be dismissed and it be awarded its reasonable attorneys' fees and costs in this action.

DATED:    March 6, 2018.                                  Respectfully submitted,


                                                 By:    /s/ Colleen Grace DeRosa
                                                        One of the Attorneys for Defendant **THE**
John M. Dickman (ARDC No. 6210329)                      **JOHN MARSHALL LAW SCHOOL**
Colleen G. DeRosa (ARDC No. 6301589)
Goli Rahimi (ARDC No. 6317753)
**OGLETREE, DEAKINS, NASH,**
  **SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone:  312.558.1220
Facsimile:   312.807.3619
*john.dickman@ogletree.com*
*colleen.derosa@ogletree.com*
*goli.rahimi@ogletree.com*


## CERTIFICATE OF SERVICE

        The undersigned attorney hereby certifies that on March 6, 2018, a true and correct copy
of the foregoing ***Defendant The John Marshall Law School's Answer and Defenses to
Complaint*** was filed electronically with the Clerk of Court using the ECF system, which sent
notification of such filing to:

                        Thomas D. Rosenwein
                        ROSENWEIN LAW GROUP
                        53 West Jackson Boulevard, Suite 1205
                        Chicago, IL  60604
                        *trosenwein@rlawgrp.com*
                        ***Attorney for Plaintiff***

                                   /s/ Colleen Grace DeRosa


                                                                        33220166.1