UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN BERGHOLZ, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 3 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| JOHN MARSHALL LAW SCHOOL, ANTHONY | ) | |
| NIEDWIECKI, and ANGELA DARBY DICKERSON, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

John Bergholz sued his former employer, John Marshall Law School, its former associate dean, Antony Niedwiecki, and its current dean, Angela Darby Dickerson, under Titles VII and IX of the Civil Rights Act of 1964, 20 U.S.C. § 1681 *et seq*. (Title IX); 42 U.S.C. § 2000e *et seq*. (Title VII), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and Illinois law. Doc. 1. Defendants move to dismiss some of Bergholz's claims under Civil Rule 12(b)(6) and to strike some of his damages requests under Rule 12(f). Doc. 11. The motion is granted in part and denied in part.

### Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Bergholz's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013).

1

The facts are set forth as favorably to Bergholz as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

John Marshall hired Bergholz, a 59-year-old man, as Executive Director of Development and Alumni Relations in June 2015. Doc. 1 at ¶¶ 2, 10. In late 2016, Bergholz met a donor for lunch at the Trump Hotel in Washington, D.C. *Id*. at ¶ 12. Then-Associate Dean Niedwiecki criticized Bergholz for patronizing the Trump Hotel, telling "others at the School" that his choice "not only reflected an endorsement of Trump as a political candidate for president, but [also showed] that Bergholz was … anti-gay, anti-Muslim and anti-Black." *Id*. at ¶ 13. Dickerson, who became Dean in January 2017, was among those who learned from Niedwiecki about the lunch. *Id*. at ¶¶ 15-16; Doc. 16 at ¶ 16.

In March 2017, the school's Director of Diversity informed Bergholz that four women under his supervision had accused him of "insensitivity." Doc. 1 at ¶ 17. The Director assured Bergholz that the school would not open a formal investigation and opined that the allegations "seemed to have been 'orchestrated.'" *Ibid*. Indeed, Niedwiecki had orchestrated the complaints by "intentionally and unjustifiably" encouraging disgruntled female employees to file them even though they had "no basis in fact or law." *Id*. at ¶¶ 19, 22, 54, 60; Doc. 19 at 9-10. Niedwiecki and the others knew that Dickerson was "bias[ed]" against older men, and they hoped that the complaints would "play to" those biases. Doc. 1 at ¶ 30.

Dickerson terminated Bergholz on April 5, 2017, explaining that she "did not want to incur the cost of a Title IX investigation" into the allegations against him. *Id*. at ¶¶ 20-21. In fact, an internal investigation would not have been costly. *Id*. at ¶ 22. Dickerson eliminated

other male employees' positions and otherwise discriminated against men before and after firing Bergholz.  *Id*. at ¶¶ 24-29.

On August 15, 2017, Bergholz submitted a letter to the Equal Employment Opportunity Commission ("EEOC") describing the circumstances surrounding his termination and alleging age and sex discrimination.  Doc. 26-1 at 8-10.  On August 28, 2017, he signed and submitted a "Charge of Discrimination."  *Id*. at 5; Doc. 12-1.  A checked box at the top of the Charge indicates that it was presented to the EEOC, and the next line reads "Illinois Department of Human Rights and EEOC."  Doc. 26-1 at 5.  (Given the checked box, Bergholz's suggestion that the Charge is an Illinois Department of Human Rights ("IDHR") charge, not an EEOC charge, Doc. 19 at 2-3, is meritless.)  The Charge lists Bergholz's year of birth and other identifying information.  Doc. 26-1 at 5.  "The John Marshall Law School" is named as the opposing party; the box for sex discrimination is checked; and the boxes for age discrimination and retaliation are not checked.  *Ibid*.  The narrative portion of the Charge reads in its entirety:

> I was hired by Respondent on or about July 20, 2015.  My most recent position was Executive Director of Alumni Directions and Development.  On or about April 5, 2017, I was discharged.
>
> I believe I have been discriminated against because of my sex, male, in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Ibid*.

The EEOC processed the Charge and issued Bergholz a right-to-sue letter on September 29, 2017.  Doc. 1 at ¶ 9.  Bergholz filed this suit on January 2, 2018.  Doc. 1.  Count I of the complaint alleges that John Marshall and Dickerson committed sex discrimination and retaliation in violation of Title VII.  *Id*. at ¶¶ 1, 9, 32-38.  Count II alleges that John Marshall and Dickerson committed age discrimination and retaliation in violation of the ADEA.  *Id*. at ¶¶ 1, 9, 39-43.  Count III alleges that John Marshall and Dickerson committed sex discrimination in violation of

Title IX. *Id*. at ¶¶ 44-50. There is no Count IV. Counts V and VI allege that Niedwiecki intentionally interfered with Bergholz's contract with John Marshall and with his prospective economic advantage, in violation of Illinois common law, by conspiring with other employees to levy false allegations against him so that Dickerson would fire him. *Id*. at ¶¶ 51-63.

**Discussion**

I.    **Claims Against John Marshall**

A.    **ADEA Discrimination Claim and ADEA and Title VII Retaliation Claims**

John Marshall contends that because Bergholz's Charge alleges neither age discrimination nor retaliation, the ADEA age discrimination claim and both retaliation claims should be dismissed for failure to exhaust administrative remedies. Doc. 12 at 4-5.

"In order to bring an ADEA claim in federal court, a plaintiff must first have raised it in a timely EEOC charge." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003); *see* 29 U.S.C. § 626(d)(1) ("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]."). The same is true for Title VII claims. *See Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005) ("[Title VII] claims brought in judicial proceedings must be within the scope of the charges filed with the EEOC; an aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination.") (internal quotation marks and brackets omitted); *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996) ("Generally, a Title VII plaintiff may bring only those claims that were included in her EEOC charge … ."). The exhaustion requirement "serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employe[r] some warning of

the conduct about which the employee is aggrieved." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citation omitted).

Bergholz contends that his August 15, 2017 letter to the EEOC is actually a Charge of Discrimination and therefore that it properly exhausts his ADEA and retaliation claims. Doc. 19 at 2-4; Doc. 26-1 at 8-10. That contention is incorrect. A document qualifies as an EEOC Charge of Discrimination only if it "request[s] remedial action," and so a document that does not request a remedy is not a charge even if it "identif[ies] the parties … [and] describe[s] generally the action or practice complained of." *Carlson v. Christian Bros. Servs.*, 840 F.3d 466, 468 (7th Cir. 2016). Bergholz does not point to anything in his letter that requests remedial action, and a review of the letter reveals that there is no such request.

A separate body of case law governs whether and when a document that is not a Charge of Discrimination—such as Bergholz's letter—can properly exhaust a claim. *See Wojtanek v. Pactiv LLC*, 492 F. App'x 650, 653 (7th Cir. 2012) ("It is an open question in this circuit whether a pro se plaintiff is bound by a formal charge if critical information supplied to the agency was omitted."). Bergholz does not, however, advert to this exception to the general rule that only claims raised in a Charge of Discrimination are exhausted, let alone argue that his letter qualifies under the exception. Accordingly, any such argument is forfeited. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue … ."); *Domka v. Portage Cnty.*, 523 F.3d 776, 783 n.11 (7th Cir. 2008) ("[W]here a party raises a specific argument for the first time on appeal, it is waived even though the 'general issue' was before the district court.").

Bergholz does argue that his Charge sufficiently raises age discrimination and retaliation because its sex discrimination allegations are "like or reasonably related to" age discrimination

and retaliation. Doc. 19 at 4. True, an EEOC charge exhausts not only the claims expressly

referenced therein, but also claims that are "like or reasonably related to" the referenced claims.

*See Sommerfield v. City of Chicago*, 863 F.3d 645, 648 (7th Cir. 2017). However, the bare-

bones allegation of sex discrimination in Bergholz's Charge is not "like or reasonably related to"

either age discrimination or retaliation. *See Johnson v. Beach Park Sch. Dist.*, 638 F. App'x 501,

502 (7th Cir. 2016) ("Johnson failed to exhaust her administrative remedies for her age

discrimination claim [because] [n]othing in her EEOC charges … even hints at age

discrimination."); *Reynolds v. Tangherlini*, 737 F.3d 1093, 1097-98, 1100 (7th Cir. 2013)

(holding that the plaintiff failed to exhaust his retaliation claim where his EEOC charge alleged

only discrimination and hostile work environment); *Swearingen-El v. Cook Cnty. Sheriff's Dep't*,

602 F.3d 852, 864-65 (7th Cir. 2010) ("Normally, retaliation and discrimination charges are not

considered like or reasonably related to one another.") (internal quotation marks omitted);

*Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 716 (7th Cir. 2006) (holding that a plaintiff failed to

exhaust his retaliation claim where his EEOC charge alleged only discrimination), *overruled on*

*other grounds as noted in EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir.

2007); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726-27 (7th Cir. 2003) ("Normally,

retaliation, sex discrimination, and sexual harassment charges are not 'like or reasonably related'

to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit

for another."); *Ajayi*, 336 F.3d at 527-28 (holding that an EEOC charge alleging that the plaintiff

was terminated due to her national origin did not exhaust an age discrimination claim where she

did not "mention age anywhere in the charge," check the "age-discrimination box," specify the

ages of the persons treated more favorably than her, or allege "any other facts that might have

alerted the EEOC to the claim"); *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550

(7th Cir. 2002) ("We do not believe that Mr. Peters' retaliation claim is like or reasonably related to this discrimination charge. Critical to a prima facie case of retaliation is that the plaintiff engaged in protected activity, such as the filing of a charge of discrimination or other complaint of discriminatory activity. However, the charge makes no mention of a complaint of discrimination, to whom the complaint was made or what adverse action allegedly resulted from the complaint. Furthermore, although given the option to check the box on the charge form indicating retaliation, Mr. Peters did not do so. Keeping in mind that one of the purposes of the charge is to alert the employer to the offending behavior, we believe that Mr. Peters' failure to mention any type of protected activity and his failure to identify retaliation as a basis for his charge preclude him from relying on the original charge of discrimination as a basis for his retaliation claim.") (internal citation omitted); *Cheek*, 31 F.3d at 503 ("When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge.").

Given the foregoing, Bergholz's ADEA age discrimination claim and his ADEA and Title VII retaliation claims are dismissed for failure to exhaust. The dismissal is without prejudice. The Seventh Circuit has explained that "the proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice, thereby leaving the plaintiff free to refile his suit when and if he exhausts all of his administrative remedies or drops the unexhausted claims." *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989); *see also Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 410 n.11 (7th Cir. 1989). This principle applies to dismissals for failure to exhaust a claim in an EEOC charge; such dismissals

are without prejudice to the plaintiff pursuing his claim in federal court upon properly exhausting

the unexhausted claims, subject of course to the statute of limitations and any other defenses.

*See Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009) ("Because [the plaintiff] failed to exhaust

administrative remedies, her complaint must be dismissed without prejudice."); *Brown v. United*

*Airlines, Inc.*, 2015 WL 5173646, at *4 (N.D. Ill. Sept. 2, 2015); *Hillman v. Costco Wholesale*

*Corp., Inc.*, 2014 WL 3500131, at *10 (N.D. Ill. July 14, 2014).  That said, "[t]he determination

that [Bergholz] ha[s] failed to exhaust his administrative remedies [is] … preclusive with respect

to an attempt by him to relitigate the question whether he ha[s] exhausted his administrative

remedies before filing [this] … suit."  *Hill v. Potter*, 352 F.3d 1142, 1147 (7th Cir. 2003).

### B.     Title IX Claims

Next, John Marshall argues that Bergholz's Title IX claims should be dismissed because

Title VII preempts employment discrimination claims brought under Title IX.  Doc. 12 at 5-6.

Resolving this legal question will not change the scope of discovery or otherwise materially

affect the litigation at this stage, so this aspect of John Marshall's motion is denied without

prejudice to renewal at summary judgment or prior to trial.

### C.     Damages

Under Rule 12(f), a district court has the discretion to "strike from a pleading an

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R.

Civ. P. 12(f); *see Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141

(7th Cir. 2009).  John Marshall moves to strike Bergholz's request for treble damages under Title

VII and Title IX, arguing that such damages are unavailable under those statutes.  Doc. 12 at 13-

14.  Bergholz fails to respond to this argument, thus forfeiting the point.  *See Firestone Fin.*

*Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or

issue not raised in response to a motion to dismiss."); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court.").

John Marshall also moves to strike Bergholz's request for "punitive or exemplary" damages under Title IX. Doc. 12 at 14. (John Marshall adds that "reputational" damages are unavailable under Title IX but cites no authority, thus forfeiting the point for purposes of this motion. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").) Neither the Seventh Circuit nor the Supreme Court has decided whether punitive damages are available under Title IX, but the only circuit to have addressed the issue held that they are not. *See Mercer v. Duke Univ.*, 401 F.3d 199, 202 (4th Cir. 2005). In reaching this conclusion, the Fourth Circuit relied on *Barnes v. Gorman*, 536 U.S. 181 (2002), which held that punitive damages were not available under Title VI. *See Mercer*, 401 F.3d at 202. *Barnes* reasoned as follows: (1) Title IX is essentially a contract between the government and its grant recipients, 536 U.S. at 187; (2) punitive damages typically are not available for breaches of contract, *id*. at 187-88; (3) "the Court has interpreted Title IX consistently with Title VI," *id*. at 185; and therefore, (4) punitive damages are not available to Title VI plaintiffs, *id*. at 188. The Fourth Circuit in turn reasoned that because the Court analogized Title VI to Title IX in holding that punitive damages are unavailable under Title VI, and because Title VI is interpreted consistently with Title IX, punitive damages are unavailable under Title IX. *See Mercer*, 401 F.3d at 202.

Against this conclusion, Bergholz argues that the Supreme Court in *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 73 (1992), recognized a "presumption in favor of any appropriate

relief for violation of a federal right." Doc. 19 at 16. But *Barnes* expressly considered "the scope of 'appropriate relief'" within the meaning of *Franklin*, so *Franklin* does not alter the analysis. *Barnes*, 536 U.S. at 185 (quoting *Franklin*, 503 U.S. at 73). Accordingly, the motion to strike is granted as to the punitive or exemplary damages under Title IX.

## II.    Claims Against Dickerson

### A.    ADEA and Title VII Claims

For the reasons given above, Bergholz's ADEA age discrimination claim and ADEA and Title VII retaliation claims against Dickerson are dismissed without prejudice for failure to exhaust. Bergholz's Title VII sex discrimination claim against Dickerson is dismissed because she was not Bergholz's employer and therefore is not a proper defendant under Title VII. *See Passananti v. Cook Cnty.*, 689 F.3d 655, 662 n.4 (7th Cir. 2012) ("Title VII authorizes suit *only* against the employer. Individual people who are agents of the employer cannot be sued as employers under Title VII."); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995) ("[A] supervisor does not, in his individual capacity, fall within Title VII's definition of employer … ."). Because this defect cannot be cured, the dismissal of the Title VII sex discrimination claim against Dickerson is with prejudice. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("District courts … have broad discretion to deny leave to amend … where the amendment would be futile.") (internal quotation marks omitted); *Culver Franchising Sys., Inc. v. Steak N Shake Inc.*, 2016 WL 4158957, at *9 (N.D. Ill. Aug. 5, 2016) (dismissing a complaint with prejudice where "repleading would appear to be futile" given a "fatal flaw in [the plaintiff's] case" that "[could not] be cured by amendment").

An alternative ground for dismissing the Title VII sex discrimination claim against Dickerson is failure to exhaust due to Bergholz not naming her as a respondent in his Charge.

"[A] party not named as the respondent in the charge may not ordinarily be sued in a private civil action under Title VII." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013). There is "an exception to the rule … where the unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Alam*, 709 F.3d at 666 (internal quotation marks and brackets omitted). At the pleading stage, a claim against a defendant not named in the EEOC charge survives if the complaint plausibly alleges that the defendant had notice and an opportunity to participate in conciliation. *See id.* at 666-67.

Dickerson's name does not appear in Bergholz's Charge, Doc. 26-1 at 5, and the complaint does not allege that she received notice of the Charge or was given an opportunity to participate in conciliation, Doc. 1. The exception, therefore, does not apply here. *See Alam*, 709 F.3d at 666 (affirming dismissal where the plaintiff "failed to allege *any* facts in the amended complaint regarding whether [the defendant] had notice of an EEOC charge or an opportunity to participate in conciliation proceedings"); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1089 (7th Cir. 2008) (affirming dismissal where the complaint failed to allege that the defendant had notice of the charge). In any event, Bergholz does not invoke the exception, thereby forfeiting the point. *See Firestone*, 796 F.3d at 825; *G & S Holdings*, 697 F.3d at 538.

### B.    Title IX Claim

Dickerson argues that the Title IX claim against her should be dismissed because individuals cannot be sued under Title IX. Doc. 12 at 6. Dickerson is correct: "Because Title IX only protects against discrimination under any education program or activity receiving federal financial assistance, … a Title IX claim can only be brought against a grant recipient and not an individual." *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019 (7th Cir. 1997).

11

Bergholz retorts that "the broad remedial purpose of the Act, the requirement to interpret its terms liberally and, most significantly, the more recent regulations implementing the Act" call *Smith*'s holding into question.  Doc. 12 at 7.  Whatever the merits of Bergholz's argument, this court may not overrule Seventh Circuit precedent.  *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("In a hierarchical system, decisions of a superior court are authoritative on inferior courts.  Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of this court whether or not they agree.") (citations omitted); *A Woman's Choice-E. Side Women's Clinic v. Newman*, 305 F.3d 684, 687 (7th Cir. 2002) ("[O]nly an express overruling relieves an inferior court of the duty to follow decisions on the books.").  Accordingly, the Title IX claim against Dickerson is dismissed.  The dismissal is with prejudice because the defect is incurable and amendment would be futile.  *See Gonzalez-Koeneke*, 791 F.3d at 807.

## III.    Claims Against Niedwiecki

As noted, the complaint alleges that Niedwiecki committed the common law torts of intentional interference with contract and intentional interference with prospective economic advantage by conspiring with other employees to make false allegations against Bergholz so that Dickerson would fire him.

### A.    IHRA Preemption

Niedwiecki argues that the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.*, preempts Bergholz's tortious interference claims.[*]  The IHRA makes it a "civil rights

---

[*] Niedwiecki styles this argument under not only Rule 12(b)(6), but also Rule 12(b)(1), arguing that this court lacks subject matter jurisdiction because the IHRA confers exclusive jurisdiction over IHRA claims on the Illinois Human Rights Commission.  Doc. 12 at 1.  But a

violation … [f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2-102(A). The term "unlawful discrimination" includes "discrimination against a person because of his or her … age [or] sex." 775 ILCS 5/1-103(Q). In addition, the IHRA makes it a "civil rights violation … to … [a]id abet, compel or coerce a person to commit any violation of [the IHRA]." 775 ILCS 5/6-101(A).

The IHRA includes this preemption provision: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D). As the Seventh Circuit has explained, this provision "preempts all state law claims seeking redress for a civil rights violation within the meaning of [the IHRA]." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) (brackets and internal quotation marks omitted). "However, where a course of conduct states an independent state law claim, that independent claim is not preempted by the IHRA." *Ibid*. A claim is independent of the IHRA "if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not 'furnish[] the legal duty that the defendant was alleged to have breached.'" *Id*. at 516-17 (quoting *Maksimovic v. Tsogalis*, 687

---

state statute cannot deprive a federal court of jurisdiction to hear a state law claim. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1086-87 (7th Cir. 2016) ("States do not have the power to enlarge or contract federal jurisdiction.") (internal quotation marks omitted). A state statute can "prevent [a] federal court from granting relief" on a state law claim by eliminating the state courts' subject matter jurisdiction to hear the claim, but the proper vehicle for making such an argument is a Rule 12(b)(6) motion. *Ibid*. (holding that a motion to dismiss on the ground that the Illinois Commerce Commission had exclusive jurisdiction to hear claims under the Illinois Public Utilities Act, 220 ILCS 5/1-101 *et seq*., was properly construed as a Rule 12(b)(6) motion, not a Rule 12(b)(1) motion).

N.E.2d 21, 23 (Ill. 1997)); *see also Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006) ("The distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached … ."); *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009) ("[P]laintiff here established a basis for imposing liability on defendants independent of the [IHRA], *i.e.*, without reference to the legal duties created by the [IHRA]."). Thus, whether the IHRA preempts a common law tort claim "depends upon whether the tort claim is *inextricably linked* to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself." *Maksimovic*, 687 N.E.2d at 23 (emphasis added).

Under these principles, tort claims are preempted where the only harm to the plaintiff is emotional distress caused by an IHRA violation, *see Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017); *Bannon v. Univ. of Chi.*, 503 F.3d 623, 630 (7th Cir. 2007); *Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 905 (7th Cir. 2002); *Krocka*, 203 F.3d at 517; *Smith v. Chi. Sch. Reform Bd. of Trustees*, 165 F.3d 1142, 1151 (7th Cir. 1999); where the plaintiff alleges that the defendant's actions are against public policy because they violated the IHRA, *see Nelson v. Realty Consulting Servs., Inc.*, 431 F. App'x 502, 507 (7th Cir. 2011); where the plaintiff claims that an IHRA violator's employer is responsible for the employee's violation due to negligent hiring and retention, *see Geise v. Phoenix Co. of Chi.*, 639 N.E.2d 1273, 1277-78 (Ill. 1994); and where the plaintiff alleges that the defendant's interference with a contract was "unjustified or malicious" because it was motivated by unlawful discrimination, *see Welch v. Ill. Sup. Ct.*, 751 N.E.2d 1187, 1197 (Ill. App. 2001). Tort claims are not preempted where conduct in addition to the alleged IHRA violation caused emotional distress, *see Naeem*, 444 F.3d at 605; where the IHRA violation is "merely incidental" to the elements of the tort

claim, *see Maksimovic*, 687 N.E.2d at 23; and where the plaintiff relies on public policy other than that embodied in the IHRA to support the tort claim, *see Blount*, 904 N.E.2d at 10.

These authorities reflect the general rule that the IHRA does not preempt a tort claim if the "claim rests … [on] behavior that would be a tort no matter what the motives of the defendant." *Naeem*, 444 F.3d at 605. Bergholz's tortious interference claims pass that test because they do not rely on any motive that would be unlawfully discriminatory under the IHRA. *See Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2003). Unlike the plaintiff in *Welch*, for example, who alleged that the defendant's actions were wrongful because they were discriminatory, *see* 751 N.E.2d at 357, Bergholz alleges that Niedwiecki's actions were wrongful because Niedwiecki intentionally induced others to make allegations that had "no basis in fact or law" in an effort to get Bergholz fired. Doc. 1 at ¶¶ 22, 54, 60. Bergholz need not delve into Niedwiecki's motive for spreading the false allegations to show that his actions were tortious.

Niedwiecki nevertheless argues that Bergholz's tort claims are "inextricably linked" to his discrimination claims because the allegations supporting the tort claims also state a claim for aiding and abetting violations of the IHRA. Doc. 12 at 8. Niedwiecki misunderstands the governing standard. As the Seventh Circuit has explained, the inquiry turns "not [on] whether the facts that support [the plaintiff's tort claim] could also have supported a discrimination claim, but instead [on] whether [the plaintiff] can prove the elements of [the tort claim] independent of legal duties furnished by the IHRA." *Naeem*, 444 F.3d at 604. Because Bergholz can prove the elements of his tort claims independent of referencing Niedwiecki's legal duties under the IHRA, there is no preemption here.

**B.      Tortious Interference with Prospective Economic Advantage Claim**

Niedwiecki argues that Bergholz's tortious interference with prospective economic advantage claim should be dismissed on corporate privilege grounds. Doc. 12 at 10-13. Under Illinois law, "corporate officer[s] … enjoy[] a qualified privilege to interfere with [a] prospective economic advantage with the corporation." *Adams v. Catrambone*, 359 F.3d 858, 865 (7th Cir. 2004); *see also HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 677 (Ill. 1989) ("[T]his court recognized a privilege for corporate officers and directors to use their business judgment and discretion on behalf of their corporations … based upon this court's recognition that the duty of corporate officers and directors to their corporations' shareholders outweighs any duty they might owe to the corporations' contract creditors."). "If the defendant's interference is privileged, the plaintiff bears the burden of proving that the defendant's conduct was malicious." *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 171 (7th Cir. 1993). The defendant's conduct is malicious, and the privilege is overcome, if the defendant "act[s] *solely* for their own gain or *solely* for the purpose of harming [the] plaintiff since such conduct is not undertaken to further the corporation's interest." *Dallis v. Don Cunningham & Assocs.*, 11 F.3d 713, 717 (7th Cir. 1993) (quoting *Mittelman v. Witous*, 552 N.E.2d 973, 987 (Ill. 1989), *overruled on other grounds by Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129, 133 (1993)); *see also J.D. Edwards & Co. v. Podany*, 168 F.3d 1020, 1023 (7th Cir. 1999) ("If solely to feather his own nest, and without believing that (or caring whether) he is helping his client, he causes the client to break a contract to the detriment of the other party to the contract, [a consultant with a qualified privilege similar to a corporate officer's] is liable for inducing the breach.") (citing *Mittelman*, 522 N.E.2d at 987).

Applying these principles, the Illinois Supreme Court in *Mittelman* held that the corporate privilege does not shield a corporate officer from liability where "it c[ould] be inferred from the facts alleged by [the plaintiff] that [the officer] sacrificed [the plaintiff] as a scapegoat" for a corporate loss when, in fact, both the plaintiff and the officer were at fault. 552 N.E.2d at 987. The court reasoned that "[i]t is certainly not in the best interest of the corporation to receive false information regarding one of its employees, even if that employee is ultimately responsible for a major corporate loss; nor is it in the best interest of the corporation for one who is responsible for such a loss to vindicate himself by unjustly imputing fault to another." *Ibid*.

Bergholz's complaint alleges in pertinent part that Niedwiecki "intentionally and unjustifiably induced four female staff members to make false allegations of 'insensitivity'" that had "no basis in fact or law." Doc. 1 at ¶¶ 22, 60; Doc. 19 at 8-9, 13-15. Those allegations, if true, are sufficient to show malice and thus to overcome corporate privilege. *Mittelman* holds that providing "false information regarding one of [a corporation's] employees" and "unjustly imputing fault to another" is not in the best interests of the corporation and therefore does not shield the offending officer from liability. 552 N.E.2d at 987. Because there is no material distinction between providing false information directly to the corporation (*Mittelman*) and inducing others to do so (here), the same result obtains here. *See Cress v. Recreation Servs., Inc.*, 795 N.E.2d 817, 847-48 (Ill. App. 2003) (upholding a jury verdict against a qualified privilege challenge where the jury could find that a corporate officer fired the plaintiff on false pretenses to further his own interests); *Chapman v. Crown Glass Corp.*, 557 N.E.2d 256, 263-65 (Ill. App. 1990) (same).

Niedwiecki contends that the interference alleged by Bergholz is "not harmful enough to be considered malicious." Doc. 12 at 13. This argument fails because it is premised on a

misconception of the term "malicious." "In the context of a suit for tortious interference with a prospective economic relationship, the term 'malicious' does not carry the ordinary meaning of vindictive or malevolent; it means intentionally and without justification." *Delloma*, 996 F.2d at 171. Whether conduct is malicious, therefore, turns not on how "harmful" it was, but on the intent behind and justification for it. As explained above, Bergholz has adequately pled maliciousness by alleging that Niedwiecki intentionally and unjustifiably convinced others to lie about Bergholz in an effort to get him fired.

Niedwiecki next argues that Bergholz's claim cannot overcome the corporate privilege because intentionally inducing co-workers to lie constitutes non-actionable opinion under Illinois law. Doc. 12 at 12. In support, Niedwiecki cites only cases that do not apply Illinois law, *see TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1201 (10th Cir. 2007) (Colorado law); *Baldwin Properties, Inc. v. Sharp*, 949 S.W.2d 952, 957 (Mo. Ct. App. 1997) (Missouri law); *Henderson v. Times Mirror Co.*, 669 F. Supp. 356, 362 (D. Colo. 1987), *aff'd*, 876 F.2d 108 (10th Cir. 1989) (Colorado law), or that address defamation claims rather than intentional interference with prospective economic advantage claims, *see Hach v. Laidlaw Transit, Inc.*, 2002 WL 31496240, at *4 (N.D. Ill. Nov. 7, 2002); *Jones v. Heartland Healthcare Ctr.*, 2017 WL 4570306, at *5 (C.D. Ill. July 5, 2017), *aff'd sub nom. Jones v. Heartland Employment Servs., LLC*, 721 F. App'x 547 (7th Cir. 2018); *McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 159 (D.D.C. 2014). Any argument based on Illinois law is thus forfeited for purposes of this motion. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

18

Finally, Niedwiecki argues that the claim is defeated by the corporate privilege because Bergholz does not allege that Niedwiecki knew that the four employees had lied to Dickerson. Doc. 12 at 11-12. This argument fails because, reading the complaint in the light most favorable to Bergholz, it can be inferred that Niedwiecki knew the insensitivity allegations were false. Although Bergholz does not expressly plead knowledge, he does allege that Niedwiecki intended to prompt the employees to make false allegations and that his actions were unjustified. Doc. 1 at ¶ 60. If Niedwiecki believed the employees' complaints were true, then his actions would have been justified and the result would have been unintentional.

For these reasons, Bergholz's tortious interference with prospective economic advantage claim survives dismissal.

### C.     Tortious Interference with Contract Claim

Niedwiecki argues that Illinois law does not recognize a cause of action for tortious interference with contract where, as here, the contract is for at-will employment. Doc. 12 at 9. When this motion became fully briefed, the court was inclined to agree. At that time, the most recent Seventh Circuit case squarely addressing this issue held unequivocally that "a defendant's inducement of the cancellation of an at-will contract constitutes at most interference with a prospective economic advantage, not interference with contractual relations." *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005) (internal quotation marks and brackets omitted). Earlier this month, however, the Seventh Circuit observed that the question whether an intentional interference with contract claim can be based on termination of at-will employment remains "unsettled in Illinois," and in so doing recognized "tension" between *Cody* and several other Seventh Circuit cases. *Webb v. Frawley*, __ F.3d __, 2018 WL 4924354, at *7 & nn. 5-6 (7th Cir. Oct. 11, 2018) (citing *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 454 (7th Cir. 2012)

19

(dismissing the plaintiff's tortious interference with contract claim for reasons other than the plaintiff's at-will employment); *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 865 (7th Cir. 1999) (observing that Illinois recognizes intentional interference with contract claims based on termination of at-will employment); *Williams v. Shell Oil Co.*, 18 F.3d 396, 402 (7th Cir. 1994) (same); *Europlast Ltd. v. Oak Switch Sys., Inc.*, 10 F.3d 1266, 1274 (7th Cir. 1993) (same); *Fishman v. Estate of Wirtz*, 807 F.2d 520, 545 n.20 (7th Cir. 1986) (same); *George A. Fuller Co. v. Chi. Coll. of Osteopathic Med.*, 719 F.2d 1326, 1330-31 (7th Cir. 1983) (same)). Given this development, the court will deny Niedwiecki's motion without prejudice to renewal at summary judgment or prior to trial, since dismissal would not change the scope of discovery or otherwise materially affect the litigation at this stage.

### Conclusion

Defendants' motion to dismiss and strike is granted in part and denied in part. The ADEA age discrimination claim and the ADEA and Title VII retaliation claims are dismissed without prejudice. The Title VII and Title IX claims against Dickerson are dismissed with prejudice. The requests for treble damages under Title VII and Title IX and for punitive or exemplary damages under Title IX are stricken. The Title VII sex discrimination and Title IX claims against John Marshall will proceed, as will both state law claims against Niedwiecki.

October 30, 2018

_____
United States District Judge